UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X

AMBROSE COOPER                                    Case No. 14-CV-3698 – ENV-VVP

                                    Plaintiff

                                                  **FIRST AMENDED
                                                  COMPLAINT**

                                                  **JURY TRIAL DEMANDED**

          -against-


THE CITY OF NEW YORK, POLICE OFFICER EDWARD MADDEN,
POLICE OFFICER ROBERT O'NEIL, SERGEANT WILLIAM
DITOMASO, POLICE OFFICER MATTHEW KUDOW individually and in their
official capacities, POLICE OFFICERS JOHN and JANE DOES 1-10 individually and in
their  official capacities as New York City Police Officers, RODERICK E. ALLEN,
JAMAICA HOSPITAL MEDICAL CENTER, REYNALDO M. PUNSAL M.D.
individually and in his official capacity, JEFFREY CHAN M.D. individually and in his
official capacity.

                                    Defendants
---------------------------------------------------------------X

          Plaintiff, AMBROSE COOPER, by his attorneys, the Law Office of Joseph N.

Obiora LLC, hereby brings this action under 42 U.S.C. § 1983 and § 1985 to redress his

civil and legal rights, and alleges as follows:


                                    **PRELIMINARY STATEMENT**

1.  This is a civil rights action in which the plaintiff, AMBROSE COOPER, seeks relief

    for the defendants' violation of his rights secured by the Civil Rights Act of 1871, 42

    U.S.C. § 1983, 1985 & 1988, by the United States Constitution, including its Fourth,

    Fifth and Fourteenth Amendments, and by the laws and Constitution of the State of

    New York. Plaintiff seeks compensatory and punitive damages, an award of costs,

    interest and attorney's fees, and such other and further relief as this Court deems just

    and proper.

## JURISDICTION AND VENUE

2. The jurisdiction of this Court is invoked under 28 U.S.C. §1343(3), this being an action authorized by law to redress the deprivation of rights secured under color of state and city law, statute, ordinance, regulation, custom, and usage of a right, privilege and immunity secured to the plaintiff by the Fourteenth Amendment to the Constitution of the United States. Jurisdiction of this court exists pursuant to 42 USC §1983, §1985, § 1988 and under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.

3. Jurisdiction is also proper in this court as to the claims brought against the defendants under both 28 U.S.C. § 1331, the general federal question jurisdiction statute, and 42 U.S.C. § 1395dd, Emergency Medical Treatment & Active Labor Act (EMTALA) and U.S. District Courts' jurisdiction over actions to enforce EMTALA provisions

4. All causes of action not relying exclusively on the aforementioned federal causes as a basis of this Court's jurisdiction are based on the Court's supplemental jurisdiction pursuant to 28 U.S.C. §1367 to hear state law causes of action as well as the pendent jurisdiction of the court. The events, parties, transactions, and injuries that form the basis of plaintiff's federal claims are identical to the events, parties, transactions, and injuries that form the basis of plaintiff's claims under applicable State and City laws.

5. As the deprivation of rights complained of herein occurred within the Eastern District of New York, venue is proper in this district pursuant to 28 U.S.C. §1391(b) and (c)

## JURY TRIAL DEMANDED

6. Plaintiff demands trial by jury on each and every one of his claims as pleaded herein.

## PARTIES

7.      At all times relevant herein, the plaintiff, AMBROSE COOPER, is and has been a citizen of the United States of America and a resident of the State of New York, and has been and is entitled to the rights, benefits and protection of the laws of the United States and the State of New York.

8.      Upon information and belief, defendant CITY OF NEW YORK is a municipal corporation organized under the laws of the State of New York operating within the City and State of New York. It is authorized by law to maintain a police department which acts as its agent in the area of law enforcement and for which it is ultimately responsible. Defendant CITY OF NEW YORK assumes the risks incidental to the maintenance of a police force and the employment of police officers. Defendant CITY OF NEW YORK was at all times relevant herein the public employer of defendants, Police Officer EDWARD MADDEN, Police Officer ROBERT O'NEIL, Sergeant WILLIAM DITOMASO, Police Officer MATTHEW KUDOW and Police Officers JOHN and JANE DOES 1-10.

9.      Defendants Police Officer EDWARD MADDEN, Police Officer ROBERT O'NEIL, Sergeant WILLIAM DITOMASO, Police Officer MATTHEW KUDOW Police Officers JOHN and JANE DOES 1-10, are and were at all times relevant herein duly appointed and acting as officers, servants, employees and agents of the New York City Police Department, a municipal agency of defendant CITY OF NEW YORK. At all times relevant herein, the individual defendants were acting under color of the laws, statutes, ordinances, regulations, policies, customs and/or usages of the State of New York and the New York City Police Department, in the course of and scope of their duties and

functions as officers, agents, servants, and employees of defendant the CITY OF NEW YORK and the New York City Police Department, and were otherwise performing and engaging in conduct incidental to the performance of their lawful functions in the course of their duties. They are sued individually and in their official capacity.

10.     By their conduct, acts, and omissions complained of herein, defendants Police Officer EDWARD MADDEN, Police Officer ROBERT O'NEIL, Sergeant WILLIAM DITOMASO, Police Officer MATTHEW KUDOW and Police Officers JOHN and JANE DOES 1-10, violated clearly established constitutional standards under the Fourth, Fifth and Fourteenth Amendments to the United States Constitution of which a reasonable police officer under the circumstances would have known.

11.     The defendant RODERICK E. ALLEN is a resident of the State of New York, entitled to the rights, benefits and protection and obligations of the laws of the United States and the State of New York.

12.     By conduct, acts, and omissions complained herein the defendant RODERICK E. ALLEN abused the benefits and protection accorded residents of the State and City of New York by making false statements against the plaintiff about a crime allegedly committed by the plaintiff without any belief in the truth or reasonableness of the said complaint resulting in the arrest and prosecution of the plaintiff.

13.     On information and belief, on or about March 12, 2013 defendant JAMAICA HOSPITAL MEDICAL CENTER (JHMC) was a corporation organized and existing pursuant to the laws of the State of New York.

14.     That at all times hereinafter mentioned, defendant JHMC was and still is a domestic not-for-profit corporation organized and existing under and by virtue of the

laws of the State of New York and conducts business as a hospital that provides hospital services to patients, licensed and defined under New York Public Health Law §2801(1) and §2801(4) (a).

15.      That at all times hereinafter mentioned and material hereto, the defendant JHMC, is a participating hospital that has a hospital emergency department, was and is still a facility subject to the rules and regulations set forth in 42 U.S.C. §1395dd.—Emergency Medical Treatment and Active Labor Act (EMTALA).

16.      At all times hereinafter mentioned, and upon information and belief, defendant REYNALDO M. PUNSAL, M.D., was and still is a physician duly licensed to practice medicine within the State of New York and was and still is a staff physician at the defendant JHMC.

17.      The said defendant REYNALDO M. PUNSAL, M.D., was and is still an independent contractor with privileges at the defendant JHMC.

18.      At all times mentioned herein, defendant REYNALDO M. PUNSAL, M.D., was in a partnership of doctors practicing medicine in the State of New York.

19.      At all times hereinafter mentioned, and upon information and belief, defendant JEFFREY CHAN, M.D., was and still is a physician duly licensed to practice medicine within the State of New York and was and still is a staff physician at the defendant JHMC.

20.      The said defendant JEFFREY CHAN, M.D., was and is still an independent contractor with privileges at the defendant JHMC.

21.      At all times mentioned herein, defendant JEFFREY CHAN, M.D, was in a partnership of doctors practicing medicine in the State of New York.

**NOTICE OF CLAIM**

22. Plaintiffs timely filed a Notice of Claim with the Comptroller of the City of New York, setting forth the facts underlying plaintiff's claim against defendants Police Officer EDWARD MADDEN, Police Officer ROBERT O'NEIL, Sergeant WILLIAM DITOMASO, Police Officer MATTHEW KUDOW and Police Officers JOHN and JANE DOES 1-10.

23. The City assigned a claim number to plaintiff's claim, and the plaintiff was subjected to an examination pursuant to N.Y. General Municipal Law Section 50-h on December 6, 2013.

24. To date, no answer has been received by plaintiff and no compensation has been offered by the defendants CITY OF NEW YORK, Police Officer EDWARD MADDEN, Police Officer ROBERT O'NEIL, Sergeant WILLIAM DITOMASO, Police Officer MATTHEW KUDOW and Police Officers JOHN and JANE DOES 1-10.

25. This action has been commenced within one year and ninety days of the date of occurrence of the events giving rise to this Complaint.

**STATEMENT OF FACTS**

26. During the afternoon of March 12, 2013 the plaintiff exited a grocery store where he bought Nutrament nutrition vitamin drink and was walking on the sidewalk of the

premises at 172-20 Hillside Avenue, Jamaica NY 11432 on his way to buy a ticket for a circuit he was to attend with his son. He then heard somebody shout "stop" from behind him, and as he did not know if it was directed at him he kept moving. Suddenly, and without any legal cause he was kicked and he fell face down to the ground.

27. While plaintiff was lying on the ground he noticed a set of the defendant police officers hovering over him. He made efforts to get up while at the same time asking questions as to what was going on. Instead of a response he was viciously kicked severally on his left lower ribs, his stomach, his head and all over his body by all the defendant police officers standing over him. At a stage plaintiff heard a voice that requested that they should stop kicking the plaintiff and it was the last thing the plaintiff heard before he passed out into a coma.

28. The plaintiff had not committed any criminal offense to warrant the brutality.

29. Plaintiff, who had lost count of time, eventually regained consciousness and noticed that he was an inpatient at the emergency wing of JHMC in Queens New York, being treated for the injuries he sustained from the brutality unleashed on him by the officers. He had suction tubes inserted through openings made in his left lower tube as part of his medical treatment and care at the hospital.

30. On waking up at the hospital in a frightened state the plaintiff noticed that he was restrained and chained to the hospital bed despite his serious health situation.

31. Plaintiff immediately started asking questions as to how he ended up in the hospital and what procedures were being undertaken on him. He received no direct answer to these but noticed that some defendant police officers were on guard at his bed and he

was in a kind of a holding cell at the hospital with the active cooperation between the defendant JHMC and defendant police officers from the New York Police Department (NYPD)

32. The defendant officers from NYPD had informed the defendant JHMC that plaintiff was assaulted because he was stealing, an allegation that had no basis at all.

33. In furtherance of the cooperation between the defendants police officers from NYPD and JHMC the defendant police officers maintained contact with and continually gave directives to the defendant JHMC regarding plaintiff's detention and medical care from the time plaintiff was on admission till his discharge on 3/18/2013.

34. In consequence the plaintiff was viewed as a criminal detainee and no aggressive effort was made to treat and stabilize the plaintiff in his medical emergency condition as a result of the brutal assault on him by the defendant officers from NYPD in utter disregard of 42 U.S.C. §1395dd (a) (b) (A)—EMTALA.

35. The defendant JHMC prematurely stopped all efforts to stabilize the plaintiff despite his serious emergency health condition, and cleared him for discharge but continued to detain him at the directive and convenience of the defendant officers from NYPD.

36. At the time of plaintiff's forced discharge the defendants JHMC by itself and through other defendants including RENALDO M. PUNSAL, M.D., JEFFREY CHAN, M.D. and defendant officers from NYPD quickly removed the tubes inserted into the plaintiff's left lower rib, discontinued all treatment and handed the plaintiff over to the defendant police officers despite the fact that the plaintiff was still bleeding from the side and was hurting all over himself.

37. On his forced discharge the plaintiff AMBROSE COOPER was handed over to NYPD defendant police officers.

38. In allowing the defendant officers from NYPD to dictate the medical policy at defendant JHMC and ordering the transfer of the plaintiff into the custody of the NYPD when he was still in serious need of medical treatment or rehabilitation the defendant JHMC utterly disregarded the legal requirements of 42 U.S.C. §1395dd (b) (1) (B)—EMTALA, mandating a transfer of the plaintiff to a facility for further treatment, and in consequence are liable to the plaintiff for his personal harm under 42 U.S.C. §1395dd (2) (A) —EMTALA.

39. The plaintiff had in consequence of the assault and brutality on him sustained four broken ribs, a collapsed lung, multiple head and chest trauma and pneumothorax which condition he still suffers from till date.

40. That at all times hereinafter mentioned, during his admission and detention the plaintiff AMBROSE COOPER was under the care, custody and control of defendant JHMC.

41. That at all times hereinafter mentioned, during plaintiff's stay at the facility of the defendant JHMC he suffered permanent personal injuries which were substantially contributed to by the acts and omissions of the defendants, as well as the violation of the plaintiff's rights pursuant to the New York Public Health Law §2801-D and enumerated in New York Public Health Law §2803-C.

42. At all times hereinafter mentioned, defendant JHMC responsibilities and obligations to plaintiff AMBROSE COOPER, as outlined in New York Public Health Law §2803-C, are nondelegable and defendants have direct and vicarious liability for

violations, deprivations and infringements of such responsibilities and obligations by any person or entity under defendants JHMC control, direct or indirect, including their employees, agents, consultants and independent contractors, whether in-house or outside entities, individuals, agencies, pools or caused by defendants' policies, whether written or unwritten, or common practices.

43. That at all times hereinafter mentioned, defendants, their employees, agents, consultants and independent contractors, deprived plaintiff AMBROSE COOPER of the rights granted to him pursuant to New York Public Health Law §2801-D and as enumerated in New York Public Health Law §2803-C.

44. This is an action for damages cognizable also under the Laws of New York State, specifically, New York Public Health Law §2801-D, §2803-C, and New York Codes, Rules and Regulations (NYCCR) 415.12.

45. That at all times hereinafter mentioned, the acts and omissions committed by employees and agents of defendants were pervasive events that occurred and continued throughout plaintiff's admission and detention at JHMC and were such that supervisors, administrators and managing agents of the defendant JHMC should have been aware of them.

46. That at all times hereinafter mentioned, in addition to the damages suffered by plaintiff as a result of defendant JHMC's deprivation of his rights as a patient in its facility, the plaintiff is entitled to recovery of attorney's fees, pursuant to New York Public Health Law §2801-D (2) in consequence of the defendant JHMC being a residential health care facility that provides hospital service and health-related service as defined under New York Public Health Law §2801.

47. That by reason of the foregoing, plaintiff was forced to undergo medical treatment, incurred medical expenses, suffered disfigurement, disability, pain and suffering, mental anguish and loss of enjoyment of life.

48. That at all times herein mentioned the defendants REYNALDO M. PUNSAL, M.D. and JEFFREY CHAN, M.D. were involved in a physician-patient relationship with the plaintiff AMBROSE COOPER.

49. The defendants REYNALDO M. PUNSAL, M.D. and JEFFREY CHAN, M.D. were carless and negligent and departed from the generally accepted standards of medical care in that they failed and neglected to render, furnish and supply the services, treatment and medication in accordance with medical and surgical standards, customs and usages; negligently, carelessly and unskillfully assessed plaintiff AMBROSE COOPER, failed to timely and continuously treat and manage plaintiff's emergency health situation that included acute fracture of the left fifth through ninth ribs, head trauma and pneumothorax (collapsed lung).

50. Defendants JMHC, REYNALDO M. PUNSAL, M.D. and JEFFREY CHAN, M.D. failed to disclose to the plaintiff reasonable foreseeable risks in allowing NYPD defendant officers to be involved in plaintiff's health care and in discharging the plaintiff into the custody of NYPD defendant officers who lacked capability to continue taking care of plaintiff's acute and emergency health situation.

51. On forcefully discharging the plaintiff from the hospital he was arraigned on March 18, 2013 at the criminal court in county of Queens NY on a two count charge of petit larceny (PL 155.25) and criminal possession of stolen property in the fifth degree (PL 155.40) with bail set at $3,000.00. Court papers noted that the plaintiff needed

medical attention and has sustained injuries relating to broken ribs. The matter was adjourned to March 22, 2013 and the plaintiff was sent over to Rikers Island for detention as he could not post bail.

52. Defendant Police Officer EDWARD MADDEN signed the criminal charge sheet upon which the plaintiff was arraigned in court on a sworn declaration of the truthfulness of the contents. The charging document also mentioned that the defendant RODERICK E. ALLEN was the complainant for the crime allegedly committed by the plaintiff.

53. At Rikers Island the plaintiff was at the bullpen being processed for a housing unit but never made it as he relapsed into a medical emergency and started bleeding from the left side of the broken ribs where the suction tubes were forcefully removed at by defendants JHMC, REYNALDO M. PUNSAL, M.D. and JEFFREY CHAN, M.D and NYPD police officers.

54. In consequence the plaintiff was rushed from the Rikers Island detention center on a medical emergency to Bellevue Hospital in Manhattan NY for prolonged medical attention.

55. Subsequent to his arraignment the plaintiff was forced to return back to the criminal court on multiple occasions, for several months, appearing in public, and before the public as a defendant, a man accused of criminal acts, acts which the plaintiff was not guilty of.

56. On June 21, 2013 all the charges against the plaintiff were disposed of, in his favor, by being dismissed. In consequence the plaintiff who had been in detention all these

months was released. At the time of the dismissal of the charges the presiding Judge at the criminal trial verbally apologized to the plaintiff for all he went through.

57. After the dismissal of the criminal complaint plaintiff continued till date to suffer from the injuries sustained from the brutality unleashed on him and has been having series of medical emergencies and been receiving medical treatment. His injuries remain permanent in nature and the same have negatively affected his social life and reduced his life expectancy.

58. The defendants' arrest, detention and prosecution of plaintiff resulted in damages to the plaintiff, including loss of residential accommodation, financial damages, termination of HRA allowance and emotional trauma.

59. That at the time the defendant police officer EDWARD MADDEN, Police Officer ROBERT O'NEIL, Sergeant WILLIAM DITOMASO, Police Officer MATTHEW KUDOW and other defendant officers from NYPD caused the plaintiff to be arrested, they did not possess a good faith basis to believe that the plaintiff had committed any criminal offense, and knew that there was no just or probable cause to have arrested the plaintiff.

60. That upon information and belief, the defendant Police Officer EDWARD MADDEN, Police Officer ROBERT O'NEIL, Sergeant WILLIAM DITOMASO, Police Officer MATTHEW KUDOW did, despite the lack of just or probable cause, agreed to and conspired to unlawfully provide false and misleading information which caused the filing of two criminal counts charging the plaintiff with crimes plaintiff never committed.

61. That upon information and belief, defendant Police Officer EDWARD MADDEN, Police Officer ROBERT O'NEIL, Sergeant WILLIAM DITOMASO, Police Officer MATTHEW KUDOW did, initiate and continue a criminal prosecution of the plaintiff without probable cause despite lack of facts objectively supporting a reasonable belief that a criminal prosecution should be initiated or continued because that prosecution could succeed and in consequence he was motivated by malice.

62. Under the oath of office and the written rules and regulations promulgated by the NYPD, line officers and command personnel have an affirmative duty to intercede and prevent crimes and other misconduct committed by officers and to report such conduct whenever they become aware of it.

63. According to the applicable Patrol Guide Interim Order members of the NYPD have an absolute duty to report serious misconduct of which they become aware. Specifically, upon observing or becoming aware of corruption or misconduct or an allegation thereof, all police officers must, among other things, promptly telephone Internal Affairs and, within 24 hours, must provide Internal Affairs with a detailed written report setting forth what they know concerning other officers' misconduct.

64. Defendants NYPD officers made no efforts to prevent the beatings and brutality unleashed on the plaintiff on March 12, 2013 nor intercede to secure the plaintiff from the subsequent acts of brutality in forcefully taking the plaintiff from his hospital bed prior to treating him of his emergency medical condition because they wanted to arraign the plaintiff for criminal charges the plaintiff never committed.

65. The defendant RODERICK E. ALLEN did not and could not have had personal knowledge of any of the incident he complained of against the plaintiff. Defendant

RODERICK E. ALLEN acted without probable cause in making a complaint and in making false statements against plaintiff, in that the defendant RODERICK E. ALLEN did not honestly and reasonably believe that there were grounds for the action since the defendant RODERICK E. ALLEN had no facts or evidence to establish any wrongdoing on the part of the plaintiff.

## CAUSES OF ACTION
### FIRST CLAIM:—EXCESSIVE FORCE

**DEPRIVATION OF RIGHTS UNDER THE FOURTH, FIFTH AND FOURTEENTH AMENDMENT 42 USC§1983**

66. Plaintiff re-alleges and incorporates by reference the allegations set forth in each preceding paragraph as if fully set forth herein.

67. The conduct and actions of defendants Police Officer EDWARD MADDEN, Police Officer ROBERT O'NEIL, Sergeant WILLIAM DITOMASO, Police Officer MATTHEW KUDOW and police officers JOHN and JANE DOES, acting in concert and under color of law, in authorizing, directing and/or causing plaintiff to be knocked down to the ground and brutally kicked and assaulted was excessive and unreasonable, was done intentionally, willfully, maliciously, with deliberate indifference and/or with a reckless disregard for the natural and probable consequence of their acts, was done without lawful justification or reason, and was designed to and did cause specific and serious physical and emotional pain and sufferings in violation of plaintiff's rights as guaranteed under 42 U.S.C. §1983, and the Fourth, Fifth and Fourteenth Amendments to the United States Constitution, including the right to be free from an unreasonable seizure of his person and the right to be free from use of excessive, unreasonable, and unjustified force.

68. As a direct and proximate result of the foregoing, plaintiff was subjected to great physical and emotional pain and humiliation, was deprived of his liberty, and was otherwise damaged and injured.

## SECOND CLAIM:—DELAY, DENIAL OF MEDICAL TREATMENT AND FAILURE TO PROTECT WHILE IN CUSTODY

### DEPRIVATION OF RIGHTS UNDER THE FOURTEENTH AMENDMENT 42 USC§1983

69.  Plaintiff re-alleges and incorporates by reference the allegations set forth in each preceding paragraphs as if fully set forth herein.

70. Members of the NYPD have an affirmative duty to seek medical attention for persons who are injured in the course of being apprehended by the police and also have a continued duty to ensure that medical care is rendered to injured arrested persons who are medically unfit to stand trial until they are confirmed fit for trial.

71. Defendants Police Officer EDWARD MADDEN, Police Officer ROBERT O'NEIL, Sergeant WILLIAM DITOMASO, Police Officer MATTHEW KUDOW and police officers JOHN and JANE DOES who were in the immediate vicinity where the plaintiff was knocked down to the ground, who brutally assaulted plaintiff resulting in plaintiff sustaining multiple injuries that included broken ribs, were aware that the plaintiff was experiencing extreme physical pain as a result of the application of excessive force on him but took no action to provide or request immediate medical care for the plaintiff.

72. Even when the plaintiff recovered consciousness at the defendant JHMC and was still in severe physical pains the defendants Police Officer EDWARD MADDEN, Police Officer ROBERT O'NEIL, Sergeant WILLIAM DITOMASO, Police Officer MATTHEW KUDOW and Police Officers John and Jane Doe in collusion with the

defendant JHMC stopped any further treatment of the plaintiff in order to arraign the plaintiff for crimes he never committed.

73. As a direct and proximate result of the foregoing, plaintiff was subjected to great physical and emotional pain and suffering, and was otherwise damaged and injured in a manner that deprived him of his constitutional rights under the fourteenth amendment.

## THIRD CLAIM:—FAILURE TO INTERCEDE

### DEPRIVATION OF RIGHTS UNDER THE FOURTH AND FOURTEENTH AMENDMENT 42 USC§1983

74. The plaintiff re-alleges and incorporates by reference the allegations set forth in each preceding paragraphs as if fully set forth herein.

75. By their conduct and under color of state law, it is believed defendants Police Officers EDWARD MADDEN, Police Officer ROBERT O'NEIL, Sergeant WILLIAM DITOMASO, Police Officer MATTHEW KUDOW and Police Officers John and Jane Doe each had opportunities to intercede on behalf of the plaintiff at all point from the time the plaintiff was knocked down on the ground in the street and brutally assaulted up to the time his medical treatment was forcefully discontinued in order to arraign the plaintiff in the criminal court but due to their intentional conduct or deliberate indifference declined or refused to do so.

76. As a direct and proximate result, the plaintiff suffered injuries and damages described above.

## FOURTH CLAIM:—FALSE ARREST AND IMPRISONMENT

### DEPRIVATION OF RIGHTS UNDER THE FOURTH AMENDMENT 42 USC§1983

77. The plaintiff re-alleges and incorporates by reference the allegations set forth in each preceding paragraphs as if fully set forth herein.

78. By reason of the allegations set forth above, the hereinabove described actions and omissions engaged in under color of state authority or being privy to abuse of state authority as engaged in by ALL THE DEFENDANTS, deprived the plaintiff of his rights secured to him by the Constitution of the United States including his Fourth Amendment right to be free from unlawful seizure of his person and from false arrest and false imprisonment.

**FIFTH CLAIM:—MALICIOUS PROSECUTION**

**DEPRIVATION OF RIGHTS UNDER THE FOURTH AMENDMENT 42 USC§1983**

79. The plaintiff re-alleges and incorporates by reference the allegations set forth in each preceding paragraphs as if fully set forth herein.

80. The above described conduct and actions of all the above named individual defendants, including police officer EDWARD MADDEN, Police Officer ROBERT O'NEIL, Sergeant WILLIAM DITOMASO, Police Officer MATTHEW KUDOW and police officers JOHN DOE and JANE DOE, defendant RODERICK E. ALLEN, acting under color of law, that resulted in the plaintiff being arraigned for crimes in violation of his constitutionally protected rights, was done intentionally, maliciously, with a deliberate indifference and/or with a reckless disregard for the natural and probable consequence of their acts, was done without lawful justification or reason, and was designed to and did cause specific and serious pain and suffering in violation of plaintiff's constitutional rights as guaranteed by 14 U.S.C. §1983, and the Fourth

Amendment to the United States Constitution right to be free from malicious prosecution.

81. As a result of the foregoing, plaintiff suffered injuries and damages set forth above.

## SIXTH CLAIM:—EXCESSIVE DETENTION

## DEPRIVATION OF RIGHTS UNDER THE FOURTH AMENDMENT 42 USC§1983

82.  The plaintiff re-alleges and incorporates by reference the allegations set forth in each preceding paragraphs as if fully set forth herein.

83. The above described conduct and actions of ALL the individual defendants, including police officer EDWARD MADDEN, Police Officer ROBERT O'NEIL, Sergeant WILLIAM DITOMASO, Police Officer MATTHEW KUDOW and police officers JOHN DOE and JANE DOE, defendant RODERICK E. ALLEN and JHMC, acting under the color of law resulted in mishandling and or suppressing exculpatory evidence thereby violating the plaintiff's rights to an early release from detention.

84. In consequence the conduct and actions of the above named defendants shocked the conscience resulting in the plaintiff being deprived of his rights secured to him by the Constitution of the United States including his Fourth Amendment right to be free from excessive detention.

## SEVENTH CLAIM:—MUNICIPAL LIABILITY FOR CONSTITUTIONAL VIOLATIONS
### *MONELL* CLAIM AGAINST THE CITY OF NEW YORK 42 USC§1983

85. The plaintiff re-alleges and incorporates by reference the allegations set forth in each preceding paragraphs as if fully set forth herein.

86. That upon information and belief, the actions of the individual defendants as above alleged, were taken in accordance with an unlawful and unconstitutional policy

allowed to exist and prevail in the CITY OF NEW YORK's failure to train its officers in the correct and legal nature of probable cause, the consequences of false and misleading statements made by its officers in a court of law or in documents initiating criminal prosecutions in a court of law, the elements and requirements of due process, and the constitutional rights of citizens.

87. That the CITY OF NEW YORK acted with deliberate indifference to the rights of the citizens to whom the municipal employees were known to come into contact by failing to properly train the employees of the CITY OF NEW YORK POLICE DEPARTMENT to avoid improper actions which would likely cause constitutional deprivations, knowingly or having reason to know that the policy, practice, or custom and the failure to properly train department personnel as afore-described would result in a deprivation of the Constitutional rights of the citizenry.

88. That the deliberate indifference of the CITY OF NEW YORK in maintaining a policy, practice or custom allowing unconstitutional actions and of failing to properly train employees with regard to proper and lawful procedures of conducting criminal investigations of the type made against the plaintiff, arrest, bringing and laying criminal charges, caused the plaintiff to suffer constitutional deprivations and was the moving force behind such constitutional deprivations.

89. It was the policy and/or custom of the CITY OF NEW YORK to inadequately train, supervise and discipline its police officers, including the defendants, thereby failing to adequately discourage further constitutional violations on the part of its police officers. The City did not require appropriate in-service or re-training of officers who were known to have engaged in police misconduct.

90. As a result of the above described policies and customs, police officers of the CITY OF NEW YORK, including the defendant officers, believed that their actions would not be properly monitored by supervisory officers and that misconduct would not be investigated or sanctioned, but would be tolerated.

91. The wrongful policies, practices, customs and/or usages complained of herein, demonstrated a deliberate indifference on the part of policy makers of the CITY OF NEW YORK to the constitutional rights of persons within the city, and were the direct and proximate cause of the violations of plaintiff's rights alleged herein.

**EIGHT CLAIM:—PENDENT CLAIM FOR ASSAULT AND BATTERY**

92. The plaintiff re-alleges and incorporates by reference the allegations set forth in each preceding paragraphs as if fully set forth herein.

93. The defendants, Police Officers EDWARD MADDEN, Police Officer ROBERT O'NEIL, Sergeant WILLIAM DITOMASO, Police Officer MATTHEW KUDOW and JOHN & JANE DOE, while acting as agents and employees for the defendant CITY OF NEW YORK, committed atrocious acts of battery and assault against the plaintiff AMBROSE COOPER which included knocking him to the ground, kicking him all over his body, breaking his rib bones and applying excessive and unnecessary force against the plaintiff without cause.

94. As a result of these excessive and unnecessary physical force used against him the plaintiff suffered severe and serious physical and mental injuries.

**NINTH CLAIM:—PENDENT CLAIM FOR FALSE ARREST AND FALSE IMPRISONMENT**

95.  The plaintiff re-alleges and incorporates by reference the allegations set forth in each preceding paragraphs as if fully set forth herein.

96. The plaintiff was wrongfully, unlawfully, and unjustifiably arrested, detained and deprived of his liberty against his will, and was falsely arrested and imprisoned by all the defendants including police officer EDWARD MADDEN, Police Officer ROBERT O'NEIL, Sergeant WILLIAM DITOMASO, Police Officer MATTHEW KUDOW and police officers JOHN DOE and JANE DOE, defendant RODERICK E. ALLEN and JHMC.

97. At all times mentioned, the unlawful, wrongful, and false arrest and imprisonment of the plaintiff was without right or probable cause and occurred without any fault or provocation on the part of the plaintiff.

98. As a result of the false arrest and imprisonment, the plaintiff was subjected to humiliation, ridicule, and disgrace and was otherwise injured and damaged.

**TENTH CLAIM:—PENDENT CLAIM FOR MALICIOUS PROSECUTION**

99.  The plaintiff re-alleges and incorporates by reference the allegations set forth in each preceding paragraphs as if fully set forth herein.

100.    The plaintiff was wrongfully, unlawfully, and unjustifiably charged on a two count charge of petit larceny and criminal possession of stolen property at the instigation of the defendants Police Officer EDWARD MADDEN, Police Officer ROBERT O'NEIL, Sergeant WILLIAM DITOMASO, Police Officer MATTHEW KUDOW and other unknown John Doe and Jane Doe police officers, defendant RODERICK E. ALLEN when there was no probable cause for such criminal charges.

101.    The plaintiff was compelled to make several court appearances in humiliating and disgracing circumstances between March 18, 2013 till June 21, 2013 when the entire

charges were dismissed with a verbal apology by the presiding Judge concerning what the plaintiff had been subjected to over the months by the act of the defendants.

102. As a result of the foregoing the plaintiff was deprived of his liberty, was subjected to serious physical and emotional pain and suffering and was otherwise damaged and injured.

### ELEVENTH CLAIM:—PENDENT CLAIM FOR INTENTIONAL AND NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

103. The plaintiff re-alleges and incorporates by reference the allegations set forth in each preceding paragraphs as if fully set forth herein.

104. Defendants Police Officer EDWARD MADDEN, Police Officer ROBERT O'NEIL, Sergeant WILLIAM DITOMASO, Police Officer MATTHEW KUDOW and other unknown John Doe and Jane Doe police officers' conduct in the atrocious assault and battery of the plaintiff, delaying, refusing and curtailing his medical treatment, and charging him with a bogus criminal charge without provocation or justification, was extreme, outrageous, and utterly intolerable in a civilized community; conduct which exceeded all reasonable bounds of decency.

105. The conduct of the defendants described above was intended to and did cause severe emotional distress to the plaintiff.

106. Further the defendants' conduct in the assault, the battery, the denial of medical care, imprisonment and prosecution of the plaintiff was careless and negligent as to the emotional health of the plaintiff and caused severe emotional distress to plaintiff.

107. As a result of the above the plaintiff was deprived of his liberty, was subjected to serious physical and emotional pain and suffering, and was otherwise damaged and injured.

## TWELFTH CLAIM:—PENDENT CLAIM FOR NEGLIGENCE IN THE MANNER OF ARREST

108.    The plaintiff re-alleges and incorporates by reference the allegations set forth in each preceding paragraphs as if fully set forth herein.

109.    The defendants, Police Officer EDWARD MADDEN, Police Officer ROBERT O'NEIL, Sergeant WILLIAM DITOMASO, Police Officer MATTHEW KUDOW and other unknown John Doe and Jane Doe police officers, while acting as agents and employees for the defendant CITY OF NEW YORK, in their capacity as police officers owed a duty to plaintiff to perform their police duties without the use of excessive force. The defendants' use of force upon the plaintiff, when plaintiff was unarmed and did not pose a threat of death or grievous bodily injury to the defendants or to others constitute negligence for which the defendants are individually and severally liable.

110.    The defendants' use of force upon the plaintiff when the defendants had no lawful authority to arrest the plaintiff or to use force against the plaintiff constitutes negligence for which the defendants are individually liable.

111.    As a proximate result of the defendants' negligent use of excessive force, plaintiff sustained physical and emotional pain and suffering, and was otherwise damaged and injured.

## THIRTEENTH CLAIM:—NEGLIGENCE FOR FAILURE TO CARE, PROTECT, AND OBTAIN MEDICAL TREATMENT

112.    The plaintiff re-alleges and incorporates by reference the allegations set forth in each preceding paragraphs as if fully set forth herein.

113.    As New York police officers the defendants EDWARD MADDEN, Police Officer ROBERT O'NEIL, Sergeant WILLIAM DITOMASO, Police Officer

MATTHEW KUDOW and other unknown John Doe and Jane Doe police officers had a duty to care, protect, and obtain medical treatment for the plaintiff while he was being held in the custody of the defendants following his arrest.

114.   The defendants knew or should have known about the severe injuries the plaintiff had suffered and were negligent in their failure to protect him from further injury at the scene when he was arrested.

115.   Further the defendants knew or should have known about the serious injuries the plaintiff was being treated for at the defendant JHMC facility as a result of the assault and battery the defendants unleashed on him yet they negligently proceeded to force a discontinuance of the treatment in order to arraign the plaintiff in the criminal court for an offence the plaintiff never committed.

116.   As a result of the above the plaintiff sustained serious physical and emotional pain and suffering, and was otherwise damaged and injured.

### FOURTEENTH CLAIM:—RESPONDEAT SUPERIOR

117.   The plaintiff re-alleges and incorporates by reference the allegations set forth in each preceding paragraphs as if fully set forth herein.

118.   At all relevant times, all defendant police officers are employees of the defendant CITY OF NEW YORK were acting for, upon, and in furtherance of the business of their employer and within the scope of their employment as New York police officers.

119.   Consequently, the City is liable under the doctrine *of respondeat superior* for their tortious actions.

### FIFTEENTH CLAIM:—NEGLIGENT HIRING/TRAINING/SUPERVISION/RETENTION

120.    The plaintiff re-alleges and incorporates by reference the allegations set forth in each preceding paragraphs as if fully set forth herein.

121.    The defendant CITY OF NEW YORK was on notice that defendant EDWARD MADDEN, Police Officer ROBERT O'NEIL, Sergeant WILLIAM DITOMASO, Police Officer MATTHEW KUDOW and other unknown John Doe and Jane Doe police officers had volatile, explosive temperaments and were wholly unfit for duty as police officers charged with the duty of crime detection, arrest and enforcement.

122.    Defendant CITY OF NEW YORK negligently trained, retained and supervised defendants EDWARD MADDEN, Police Officer ROBERT O'NEIL, Sergeant WILLIAM DITOMASO, Police Officer MATTHEW KUDOW and other unknown John Doe and Jane Doe police officers. The acts and conduct of defendants EDWARD MADDEN, Police Officer ROBERT O'NEIL, Sergeant WILLIAM DITOMASO, Police Officer MATTHEW KUDOW and other unknown John Doe and Jane Doe police officers were the direct and proximate cause of injury and damage to plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York

123.    As a result of the above the plaintiff was deprived of his liberty, was subjected to great physical and emotional pain and suffering, and was otherwise damaged and injured.

### SIXTEENTH CLAIM:—AGAINST JAMAICA HOSPITAL MEDICAL CENTER FOR MEDICAL MALPRACTICE

124.    The plaintiff re-alleges and incorporates by reference the allegations set forth in each preceding paragraphs as if fully set forth herein.

125.    That, during the above pled periods of times, plaintiff was under the professional care of defendant JHM, their agents, servants, and employees.

126.    Defendants JHMC, their agents, servants, and employees held themselves out as duly qualified and capable of rendering adequate care and treatment to the public and for such purpose hired doctors, nurses, pharmacists, physicians, attendants, and other health care personnel.

127.    Plaintiff relied upon the advice and care of defendant JHMC their agents, servants, and employees and upon their knowledge, skill and representation that he would be adequately cared for and in consequence the plaintiff continuously submitted himself to their care and treatment.

128.    That the care and treatment rendered by defendant JHMC, their agents, servants, and employees were improper, negligent, careless and they failed to employ the skill, care and diligence commonly and ordinarily possessed by, and required of physicians, nurses, aides, and physician's assistance in the community, and failed to use their best judgment in the care and treatment of plaintiff.

129.    The defendants JHMC, their agents, servants, and employees failed to treat and care for the plaintiff in accordance with the standards of care and treatment generally accepted in the community; departed from good and accepted medicine and nursing practice and neglected to use approved methods in general use, skill and good judgment in their care and treatment of plaintiff, thereby negligently and carelessly causing, permitting and allowing plaintiff's medical condition to deteriorate and worsen.

130.    That the foregoing was caused without any negligence on the part of plaintiff contributing thereto.

131.    By reason of the foregoing plaintiff was forced to undergo medical treatment, incurred medical expenses, suffered disfigurement, disability, pain and suffering, mental anguish and loss of enjoyment of life and has incurred substantial damages.


### SEVENTEENTH CLAIM:—AGAINST JAMAICA HOSPITAL MEDICAL CENTER FOR NEGLIGENCE

132.    The plaintiff re-alleges and incorporates by reference the allegations set forth in each preceding paragraphs as if fully set forth herein.

133.    The defendant JHMC, their agents, servants, and employees were careless and negligent in their failing to properly take medical decisions relating to the care of the plaintiff.

134.    The defendant JHMC, their agents, servants, and employees were careless and negligent in their decision to transfer the plaintiff into the care and custody of the NYPD defendant police officers knowing that the plaintiff's condition had not stabilized at the time.

135.    In consequence of the above the plaintiff incurred medical expenses, suffered disfigurement, disability, pain and suffering, mental anguish and loss of enjoyment of life and has incurred substantial damages.

### EIGHTEENTH CLAIM:—AGAINST JAMAICA HOSPITAL MEDICAL CENTER FOR NON STABILIZATION OF PLAINTIFF –BREACH OF 42 U.S.C.S 1395dd—EMTALA

136.    The plaintiff re-alleges and incorporates by reference the allegations set forth in each preceding paragraphs as if fully set forth herein.

137.   The defendant JHMC, their agents, servants, and employees received the plaintiff into their facility as an emergency case and in an unconscious position through a medical emergency ambulance.

138.   When the defendant JHMC learnt from the NYPD defendant police officers that the plaintiff was badly battered while allegedly stealing, the defendant JHMC, its agents, servants and employees became negligent in their efforts to stabilize the plaintiff in accordance with the standards of care and treatment generally accepted in the community.

139.   Instead of the defendant making efforts to stabilize the plaintiff the defendant JHMC rather was communicating with the NYPD defendant officers on how to secure the plaintiff and detain him in their facility thereby utterly disregarding the legal requirements of 42 USCS 1395dd (b) (1) (A)—Emergency Medical Treatment & Active Labor Act (EMTALA).

140.   In consequence of the above the plaintiff medical condition worsened and deteriorated resulting in disfigurement, disability, pain and suffering, mental anguish and loss of enjoyment of life and has incurred substantial damages.

### NINETEENTH CLAIM:—AGAINST JAMAICA HOSPITAL MEDICAL CENTER FOR NON-TRANSFER OF PLAINTIFF –BREACH OF 42 U.S.C.S 1395dd—EMTALA

141.   The plaintiff re-alleges and incorporates by reference the allegations set forth in each preceding paragraphs as if fully set forth herein.

142.   The defendant JHMC, their agents, servants, and employees discharged the plaintiff on 3/18/2013 to the custody of the NYPD defendant police officers in order for the plaintiff to be arraigned to the criminal court at the request of the defendant

NYPD police officers despite knowing that the plaintiff's health situation did not warrant a discharge to police custody for arraignment.

143.   At the time of plaintiff's discharge the defendant JHMC, their agents, servants, and employees knew that in line with the accepted medical customs, practices and standards, the plaintiff's health condition necessitated a transfer of the plaintiff to another facility for further treatment instead of a discharge to the custody of the NYPD defendant police officers for the purpose of arraignment in a criminal court.

144.   That the defendant JHMC, their agents, servants, and employees breached the duty imposed upon it under 42 USCS 1395dd (b) (1) (B)—Emergency Medical Treatment & Active Labor Act (EMTALA).

145.   In consequence of the above the plaintiff medical condition worsened and deteriorated resulting in disfigurement, disability, pain and suffering, mental anguish and loss of enjoyment of life and has incurred substantial damages.

## TWENTIETH CLAIM:—MEDICAL MALPRACTICE AGAINST DEFENDANT REYNALDO M. PUNSAL, M.D.

146.   The plaintiff re-alleges and incorporates by reference the allegations set forth in each preceding paragraphs as if fully set forth herein.

147.   At all times herein mentioned, defendant REYNALDO M. PUNSAL, M.D., held himself out to be a physician offering professional services to the public in general, and specifically to plaintiff that he was competent to perform and render all the medical care, treatment, services and advice required by plaintiff.

148.   That at all times mentioned herein, defendant REYNALDO M. PUNSAL, M.D. and defendant JHMC stood in such a relationship with each other in their care and treatment of plaintiff as to make each liable for the acts and omissions of the other.

149.   That during the above pled time periods, plaintiff sought the professional care of defendant REYNALDO M. PUNSAL, M.D. for certain medical complaints relating to the aforesaid medical emergency, and this defendant REYNALDO M. PUNSAL, M.D. purported to offer medical care, diagnosis, treatment and services to plaintiff.

150.   The medical care, diagnosis, treatment and services rendered to plaintiff were rendered carelessly, unskillfully, negligently, and not in accordance with the accepted standards of medical care, diagnosis, treatment and services in the medical community.

151.   That by reason of the foregoing, plaintiff AMBROSE COOPER was forced to undergo medical treatment, incurred medical expenses, suffered disfigurement, disability, pain and suffering, mental anguish and loss of enjoyment of life.

152.   That by reason of the foregoing plaintiff was forced to undergo medical treatment, incurred medical expenses, suffered disfigurement, disability, pain and suffering, mental anguish and loss of enjoyment of life and has incurred substantial damages.

### TWENTY FIRST CLAIM:—MEDICAL MALPRACTICE AGAINST DEFENDANT JEFFREY CHAN, M.D.

153.   The plaintiff re-alleges and incorporates by reference the allegations set forth in each preceding paragraphs as if fully set forth herein.

154.   At all times mentioned herein, defendant JEFFREY CHAN, M.D., held himself out to be a physician offering professional services to the public in general, and specifically to plaintiff that he was competent to perform and render all the medical care, treatment, services and advice required by plaintiff.

155.    That at all times mentioned herein, defendant JEFFREY CHAN, M.D. and defendant JHMC stood in such a relationship with each other in their care and treatment of plaintiff as to make each liable for the acts and omissions of the other.

156.    That during the above pled time periods, plaintiff sought the professional care of defendant JEFFREY CHAN, M.D. for certain medical complaints relating to the aforesaid medical emergency, and this defendant JEFFREY CHAN, M.D. purported to offer medical care, diagnosis, treatment and services to plaintiff, including admitting and discharging the plaintiff from the defendant JHMC facility.

157.    The medical care, diagnosis, treatment and services rendered to plaintiff were rendered carelessly, unskillfully, negligently, and not in accordance with the accepted standards of medical care, diagnosis, treatment and services in the medical community.

158.    That by reason of the foregoing, plaintiff AMBROSE COOPER was forced to undergo medical treatment, incurred medical expenses, suffered disfigurement, disability, pain and suffering, mental anguish and loss of enjoyment of life.

159.    That by reason of the foregoing plaintiff was forced to undergo medical treatment, incurred medical expenses, suffered disfigurement, disability, pain and suffering, mental anguish and loss of enjoyment of life and has incurred substantial damages.

### TWENTY SECOND CLAIM:—NEGLIGENT HIRING/TRAINING/SUPERVISION/RETENTION BY DEFENDANT JHMC.

160.    The plaintiff re-alleges and incorporates by reference the allegations set forth in each preceding paragraphs as if fully set forth herein.

161.    The defendant JHMC selected, hired, trained, retained, assigned and supervised all members of its staff, including the defendants individually named above.

162.    Defendant JHMC was negligent and careless when it selected, hired, trained, retained, assigned, supervised all members of its staff including the defendants individually named above.

163.    Due to the negligence of the defendants as set forth above, the plaintiff suffered physical and mental injury, pain and trauma, together with the embarrassment, humiliation shock, fright and loss of freedom.

**WHEREFORE**, plaintiffs request the following relief jointly and severally as against all of the defendants:

a)  Award compensatory damages against all defendants jointly and severally in an amount to be determined by a jury.

b)  Award punitive damages against all defendants in an amount to be determined by a jury;

c)  An award to the plaintiff of attorney's fees under 42 U.S.C. Section 1988 and of all costs incurred in bringing this action; and

d)  Such other and further relief as the Court deems just and proper.

Dated: October 6, 2014
         Jamaica, New York

                                                    *Sgd/Joseph N. Obiora*
                                                    JOSEPH N. OBIORA, ESQ.
                                                    Law Office of Joseph N. Obiora LLC.
                                                    Attorney for Plaintiff Ambrose Cooper
                                                    146-08 Hillside Avenue, 2nd Fl.
                                                    Jamaica, NY 11435
                                                    (718) 297-3705