FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y

★ AUG 25, 2016

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------- x

AMBROSE COOPER,

                              Plaintiff,

      -against-

CITY OF NEW YORK, POLICE OFFICER EDWARD MADDEN,
POLICE OFFICER ROBERT O'NEIL, SERGEANT WILLIAM
DITOMASO, POLICE OFFICER MATTHEW KUDOW, POLICE
OFFICERS JOHN AND JANE DOES 1-10, RODERICK E.
ALLEN, JAMAICA HOSPITAL MEDICAL CENTER,
REYNALDO M. PUNSAL, M.D., AND JEFFREY CHAN, M.D.,

                              Defendants.

------------------------------------------------------------------- x

MEMORANDUM & ORDER

14-cv-3698 (ENV) (PK)

VITALIANO, D.J.,

        Plaintiff Ambrose Cooper brings this action against the City of New York ("the City"),

Police Officers Edward Madden, Robert O'Neil, Matthew Kudow, Police Sergeant William

DiTomaso, Police Officers John and Jane Does 1-10, Roderick E. Allen, Jamaica Hospital

Medical Center ("JHMC"), Reynaldo M. Punsal, M.D., and Jeffrey Chan, M.D., all pursuant to

42 U.S.C. § 1983, for alleged violations of his constitutional rights resulting from his arrest, and

subsequent denial of adequate medical care at JHMC.

        On March 13, 2015, JHMC, Dr. Punsal, and Dr. Chan ("hospital defendants") moved,

under Rule 12(b)(6), to dismiss Cooper's Emergency Medical Treatment and Labor Act

("EMTALA") claim, and, thereafter, that the exercise of supplemental jurisdiction over state law

claims of medical malpractice, false arrest, false imprisonment, excessive detention, and

negligent hiring, be declined. The same day, the City, Madden, DiTomaso, O'Neil, and Kudow

(the "City defendants") moved to dismiss Cooper's § 1983 false arrest, malicious prosecution,

delay and denial of medical treatment, and excessive detention claims, as well as his *Monell*

1

charge and related state law claims, for failure to state a claim. For the reasons that follow, the motions to dismiss are granted in their entirety. The excessive force and failure to intercede claims, which were not the subject of motions, remain unaffected by this disposition.

### Background[1]

On March 12, 2013, Cooper was leaving a grocery store at 172-20 Hillside Avenue, in Jamaica, Queens, when he heard someone shout an order to stop. Amended Complaint, ECF Dkt. No. 12 ("Compl.") at ¶ 26. Not realizing the order was directed at him, he kept walking. *Id.* He was then kicked and fell to the ground. *Id.* Cooper discovered several police officers standing above him, and he asked them what was happening. *Id.* at ¶ 27. They did not respond. *Id.* Instead, he says, the officers attacked him, kicking his left lower ribs, stomach, head, and the rest of his body. *Id.* Cooper lost consciousness and fell into a coma. *Id.* The last thing plaintiff heard before losing consciousness was a voice requesting that the police stop kicking him. *Id.*

He awoke in JHMC's emergency wing, chained to a hospital bed. *Id.* at ¶¶ 29-30. Cooper had sustained four broken ribs, a collapsed lung, multiple head and chest trauma, and pneumothorax. *Id.* at ¶ 39. He observed that he was in "a kind of holding cell at the hospital" with "some defendant police officers . . . on guard at his bed." *Id.* at ¶ 31. The officers informed Cooper that he had been arrested for stealing, an offense which he denies. *Id.* at ¶ 32. Cooper alleges that, in the six days he spent at JHMC, "no aggressive effort" was made to treat or stabilize him. *Id.* at ¶ 34. Cooper also, paradoxically, alleges that the hospital defendants cleared him for discharge, yet continued to detain him "at the directive and convenience" of NYPD and its officers. *Id.* at ¶ 35.

---

[1] All facts are taken from the amended complaint and deemed true solely for purposes of this order.

2

On March 18, 2013, following his actual discharge from JHMC, Cooper was arraigned on two counts of petit larceny and criminal possession of stolen property in the fifth degree. *Id.* at ¶ 51. Cooper says that, at arraignment, criminal court noted he still needed medical attention, but he was nevertheless sent to Rikers Island. *Id.* Plaintiff did not complete processing at Rikers Island, however, because "he relapsed into a medical emergency" involving bleeding from the wound where suction tubes had been. *Id.* at ¶ 53. Plaintiff was then rushed to Bellevue Hospital. *Id.* at ¶ 54.

Plaintiff maintains that the arresting officers "conspired to unlawfully provide false and misleading information" in order to charge him "with crimes [he] never committed." *Id.* at ¶ 60. Defendant Allen, the complaining witness against Cooper, according to the criminal complaint, told police that Cooper had taken a bag containing an iPad and iPhone charger—statements, Cooper says, that were false. Nevertheless, these statements formed the basis for his arrest. *Id.* at ¶ 65; NYPD Omniform Complaint and Arrest Report, attached as Ex. 1 to City Defs. Mot. for Pre-Mot. Conf., dated Oct. 20, 2014 (hereinafter "arrest report"), which is properly before the Court on this motion. *See Alvarez v. Cty. of Orange, N.Y.*, 95 F. Supp. 3d 385, 394-95 (S.D.N.Y. 2015) (collecting cases where arrest reports were incorporated by reference into malicious prosecution and false arrest complaints). On June 21, 2013, all charges were dismissed. Compl. at ¶ 56.

### Standard of Review

Federal Rule of Civil Procedure 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief." A litigant need not supply "detailed factual allegations" in support of his claims, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), but he must provide more "than an unadorned, the-

defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). "A pleading that offers 'labels and conclusions' . . . will not do." *Id.* (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 557).

Applying the elemental standard, to survive a Rule 12(b) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). This "plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quotations omitted). On a Rule 12(b)(6) motion, the trial court must accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the nonmoving party. *Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104, 115 (2d Cir. 2008) (quotation omitted). In addition, the district court "may consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference . . . and documents possessed by or known to the plaintiff and upon which [he] relied in bringing the suit." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted).

## Discussion

### I.     The Hospital Defendants

#### a.   EMTALA Liability

Cooper claims that the hospital defendants violated EMTALA by failing to properly treat and stabilize him before release. EMTALA, commonly known as the Patient Anti-Dumping Act, states that an individual seeking emergency care from a Medicare-participating hospital with an

4

emergency room[2] must be provided "an appropriate medical screening examination ... to determine whether or not an emergency medical condition ... exists." 42 U.S.C. § 1395dd(a). If hospital staff determine that an emergency medical condition exists, then, with certain exceptions not relevant here, the staff must "stabilize" the patient before transferring or discharging him. 42 U.S.C. § 1295dd(b)(1). EMTALA was passed by Congress to prevent "patient dumping," that is, the practice of emergency rooms turning away patients for economic or other nonmedical reasons. *Bryan v. Rectors & Visitors of Univ. of Va.*, 95 F.3d 349, 351 (4th Cir. 1996) (collecting cases discussing legislative history). EMTALA is a "limited 'anti-dumping' statute, not a federal malpractice statute." *Alvarez-Torres v. Ryder Mem'l Hosp., Inc.*, 582 F.3d 47, 52 (1st Cir. 2009) (quoting *Bryan*, 95 F.3d 349, 351 (4th Cir. 1996)).

The hospital defendants argue that EMTALA does not apply, because Cooper was properly treated and stabilized when he was in an emergency medical condition, and was discharged six days later, but only after being admitted to the hospital, and after his condition was stabilized. EMTALA's coverage, they contend, ends upon inpatient admission. Put another way, Cooper was never dumped from the emergency room; he was transferred and admitted for in-patient care.

This issue, it seems, has never been before the Second Circuit. The Fourth and Ninth Circuits, as well as a smattering of district courts across the country, have held that admission for inpatient care ends a hospital's EMTALA obligations. *See Bryant v. Adventist Health Systems/West*, 289 F.3d 1162, 1167 (9th Cir. 2002); *Bryan*, 95 F.3d at 352; *Lopez v. Contra Costa Reg'l Med. Ctr.*, 903 F. Supp. 2d 835, 840 (N.D. Cal. 2012); *James v. Jefferson Regional*, No. 4:12-CV-267 (JAR), 2012 WL 1684570, at *3 (E.D. Mo. May 15, 2012); *Money v. Banner*

---

[2] Defendants concede that Jamaica Hospital accepts Medicare and has an emergency room.

*Health*, No. 3:11-cv-00800-LRH-WGC, 2012 WL 1190858, at \*9 (D. Nev. Apr. 9, 2012);

*Hussain v. Kaiser Foundation Health Plan*, 914 F. Supp. 1331, 1335 (E.D. Va. 1996). The

Centers for Medicare & Medicaid ("CMS"), responsible for enforcing EMTALA, promulgated a

rule in 2003 adopting this view as well. *See* 42 C.F.R. § 489.24(d)(2) (2014). New York courts

have agreed. *See Lear v. Genesee Mem'l Hosp.*, 254 A.D.2d 707, 708-09, 678 N.Y.S.2d 228

(1998), *leave to appeal denied*, 92 N.Y.2d 1045, 708 N.E.2d 179 (1999) (dismissing failure to

stabilize claim because patient was admitted to the hospital, and finding that EMTALA only

applies to emergency treatment); *Whitney-Carrington v. New York Methodist Hosp.*, No.

26096/98, 2001 WL 856133, at \*1 (N.Y. Sup. Ct. Jan. 8, 2001), *aff'd*, 289 A.D.2d 326, 734

N.Y.S.2d 490 (2001) (denying motion to amend to add EMTALA claim where patient was

admitted to the hospital for pregnancy complications).

Cooper, nonetheless, implores adoption of the approach followed by the Sixth Circuit in

*Thornton v. Sw. Detroit Hosp.*, 895 F.2d 1131 (6th Cir. 1990) and *Moses v. Providence Hosp.*

*and Med. Ctrs., Inc.*, 561 F.3d 573 (6th Cir. 2009). Those cases applied EMTALA even where

the patient had been treated by the hospital for days or weeks as an inpatient. Yet, on deeper

analysis, *Thornton* seems particularly inapplicable here because that plaintiff was refused a

transfer based on his insurance coverage. *Thornton*, 895 F.2d at 1132. More critically, the Sixth

Circuit was concerned, it appears, with hospitals evading EMTALA by "admitting" patients they

had no intention of treating. *Id.* at 1135 ("Hospitals may not circumvent the requirements of the

Act merely by admitting an emergency room patient to the hospital, then immediately

discharging that patient.").[3] Given what plaintiff has pleaded about his hospital stay, in any

---

[3] On the other hand, the Sixth Circuit overlooks the fact that, once admitted, the patient would be
protected by malpractice protections that would likely not apply to a patient dumped and never
treated.

event, no such concerns are implicated in this case.

*Moses* relies on *Thornton* to come to a similar conclusion, refusing to establish as a blanket rule that admitting a patient ushers the treating hospital outside of the statute. *See Moses*, 561 F.3d at 584. Instructively, though, the Sixth Circuit denied a petition to rehear the case *en banc*. In dissent, Circuit Judge Richard Allen Griffin warned that,

> [b]y remaining loyal to the errant obiter dictum contained in *Thornton*[,] the majority has perpetuated a serious conflict between our circuit and the Ninth Circuit, the Fourth Circuit, the federal regulations, and the vast majority of lower court decisions [...] Our panel decision misconstrues EMTALA, making it a general federal medical malpractice statute, rather than an act limited to emergency room screening and stabilization.

*Moses v. Providence Hosp. & Med. Ctrs., Inc.*, 573 F.3d 397, 397 (6th Cir. 2009) (Griffin, J., dissenting) (citations omitted).

The defense argument echoes the words of Judge Griffin, which correctly brand the Sixth Circuit cases as outliers. "EMTALA is not a substitute for state law on medical malpractice. It was not intended to guarantee proper diagnosis or to provide a federal remedy for misdiagnosis or medical negligence." *Hardy v. New York City Health & Hosp. Corp.*, 164 F.3d 789, 792 (2d Cir. 1999) (quoting *Power v. Arlington Hosp. Ass'n*, 42 F.3d 851, 856 (4th Cir. 1994)) (citations and internal quotation marks omitted). The requirement to stabilize an incoming patient upon presentment, if it applies at all,[4] "was intended to regulate the hospital's care of the patient only

---

[4] Several courts have found these provisions of more limited reach, holding, based on a plain language reading of the statute, that the stabilization requirement applies only to transfers, and not to patients admitted for inpatient care or discharged. *Harry v. Marchant*, 291 F.3d 767, 774 (11th Cir. 2002) (holding that hospitals have no EMTALA duty to stabilize a patient who is not transferred to another facility); *Money*, 2012 WL 1190858, at *10 (same). On the other hand, it might be a strained reading to interpret the statute to "allow hospitals and physicians to avoid providing stabilizing treatment by simply refusing to transfer the patient ...." *Matter of Baby K*, 16 F.3d 590, 597 (4th Cir. 1994). Given the reasons for the decision made in this case, this issue is an academic one.

7

in the immediate aftermath of the act of admitting her for emergency treatment and while it considered whether it would undertake longer-term full treatment or instead transfer the patient to a hospital that could and would undertake that treatment." *Bryan*, 95 F.3d at 352. Given the plain words of the statute, and reinforced by its legislative history and regulatory interpretation, it is compelling that EMTALA was intended to create a new cause of action to remedy patient dumping, not replace or duplicate existing state law torts. *James*, 2012 WL 1684570, at *3 (quoting *Summers v. Baptist Med. Ctr. Arkadelphia*, 91 F.3d 1132, 1137 (8th Cir. 1996)). Rather, "[a]fter a patient has been admitted in good faith as an inpatient, professional (i.e., doctor-patient) and fiduciary (i.e., hospital-patient) duties attach to the situation." *Anderson v. Kindred Hosp.*, No. 1:05-CV-294, 2008 WL 794275, at *4 (E.D. Tenn. Mar. 24, 2008). EMTALA was not meant to tread on those rights or responsibilities.

Drawing every reasonable inference in Cooper's favor, it is crystal clear from his pleadings that he does not claim he was refused bona fide medical treatment at JHMC. He merely complains *about* the treatment he received. The short of it is that plaintiff seeks to use EMTALA as a federal malpractice statute. Cooper's EMTALA claims against the hospital defendants are therefore dismissed. Especially given this threshold dismissal, the Court declines to exercise supplemental jurisdiction over his state law claims, which are dismissed with leave to renew in a state court of appropriate jurisdiction, provided that they were timely filed when brought in this case.

### b. § 1983 Liability

The hospital defendants also contend that the § 1983 charges against them are insufficiently pled and must be dismissed. Elementally, a § 1983 action can only be maintained against a "person" who has, acting under the color of state law, deprived another of his or her

constitutional rights. 42 U.S.C. § 1983. JHMC must be dismissed as a § 1983 defendant because institutional entities are not "persons" within the meaning of the statute. *See Reynolds v. Darrah*, No. 11 Civ. 5885 (JGK), 2011 WL 4582430, at *1 (S.D.N.Y. Sept. 30, 2011) ("Jails, courts, corporations and law firms are not 'persons' within the meaning of § 1983."). Even in its amended form, the complaint pleads no facts suggesting that corporate policy liability might be stated against JHMC. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694, 98 S. Ct. 2018, 2037-38, 56 L. Ed. 2d 611 (1978).

As to the defendant doctors, generally speaking, private hospitals and their employees are not considered state actors for § 1983 purposes. *See Doe v. Rosenberg*, 996 F. Supp. 343, 348 (S.D.N.Y. 1998), *aff'd* 166 F.3d 507 (2d Cir. 1999). For a private person to act under color of state law, one of three tests must be met: "(1) the State compelled the conduct [the 'compulsion test'], (2) there is a sufficiently close nexus between the State and the private conduct [the 'close nexus test' or 'joint action test'], or (3) the private conduct consisted of activity that has traditionally been the exclusive prerogative of the State [the 'public function test']." *McGugan v. Aldana-Bernier*, 752 F.3d 224, 229 (2d Cir. 2014), *cert. denied*, 135 S. Ct. 1703, 191 L. Ed. 2d 680 (2015) (quoting *Hogan v. A.O. Fox Memorial Hosp.*, 346 F. App'x 627, 629 (2d Cir. 2009)) (brackets original). Cooper relies on the close nexus or joint action test. To satisfy the requirements of this test, Cooper must plausibly plead facts showing "a sufficiently close nexus between the State and the challenged action of the [private] regulated entity so that the action of the latter may be fairly treated as that of the State itself." *Blum v. Yaretsky*, 457 U.S. 991, 1004, 102 S. Ct. 2777, 73 L. Ed. 2d 534 (1982) (quoting *Jackson v. Metropolitan Edison C*, 419 U.S. 345, 351, 95 S. Ct. 449, 42 L. Ed. 2d 477 (1974)).

Plaintiff's allegations, however, are insufficient to establish such a nexus. Cooper pleads

only that "all the defendants" are liable for false arrest and false imprisonment because they deprived him of constitutional rights, Compl. ¶ 78; and that "ALL the individual defendants" participated in "mishandling and or suppressing exculpatory evidence" thereby violating his rights, Compl. ¶ 83. In his opposition, Cooper cites to ¶¶ 31, 33, and 35 of the amended complaint, which allege that the hospital defendants kept him in "a kind of holding cell," that they engaged in "active cooperation" with "defendant police officers," that the officers "maintained contact with and continually gave directives to" JHMC, and that the hospital continued to "detain him at the directive and convenience of the defendant officers from NYPD."

The shortcomings in the amended complaint are glaring. It fails to specify any actual directive or instruction, let alone one that "overrides a doctor's independent, medical judgment." *Lewis v. Krymkevich*, No. 07 Civ. 4583 (SCR) (GAY), 2009 WL 4884093, at *11 (S.D.N.Y. Dec. 17, 2009). Conclusory statements that the hospital defendants acted jointly with the City defendants, or that they were in contact with one another, are not enough to establish conspiracy liability. *See Sasscer v. Barrios-Paoli*, No. 05 Civ. 2196 (RMB) (DCF), 2008 WL 5215466, at *6 (S.D.N.Y. Dec. 8, 2008) (dismissing pleading that said the private defendant "acted willfully in a joint fashion" as a "conclusory assertion" that failed to establish a conspiracy); *Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002) (affirming dismissal of conspiracy claim that pled conclusorily that the defendants acted "in concert"); *Bodek v. Bunis*, No. 06-CV-6022, 2007 WL 1526423, at *6 (W.D.N.Y. May 23, 2007) (dismissing claims that stated only "in conclusory fashion" that defendants "acted jointly or by mutual assent"); *Fisk v. Letterman*, 401 F. Supp. 2d 363, 377 (S.D.N.Y. 2005) ("Communications between a private and a state actor, without facts supporting a concerted effort or plan between the parties, are insufficient to make the private party a state actor.").

10

No such plan or conspiracy is demonstrated by Cooper's already amended pleadings. Indeed, Cooper's pleadings do not describe any violation of his constitutional rights. He was in police custody when he was hospitalized for treatment. He was treated in a (very familiar) secure setting in the hospital. The hospital defendants determined how long he was to be treated. Law enforcement and the courts determined how long he was to remain in custody. His § 1983 claims against the hospital defendants are therefore dismissed.

## II. The City Defendants

### a. False Arrest, False Imprisonment, and Malicious Prosecution

The City defendants press their argument that plaintiff's false arrest, false imprisonment, and malicious prosecution claims fail to state a claim because there was probable cause for Cooper's arrest and prosecution. Claims of false arrest pursuant to § 1983, "a species of false imprisonment," involve violations of an arrestee's Fourth Amendment right to be free from unreasonable searches and seizures. *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 115, 118 (2d Cir. 1995). A claim for false arrest requires that (1) the defendant intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged. *Id.* (quoting *Broughton v. State of New York*, 373 N.Y.S.2d 87, 93, 335 N.E.2d 310, 314, *cert. denied*, 423 U.S. 929, 96 S. Ct. 277, 46 L. Ed. 2d 257 (1975)) (pointing to New York law, which is "substantially the same" as the elements essential to a § 1983 claim). Under either theory, importantly, where probable cause supports the arrest, it acts as a complete defense. *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (citing *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994).

Of course, prosecution follows arrest. So it is not surprising that, similarly, a malicious prosecution claimant must show: "(1) that the defendant initiated a prosecution against [him], (2)

11

that the defendant lacked probable cause to believe the proceeding could succeed, (3) that the defendant acted with malice, and (4) that the prosecution was terminated in the [claimant's] favor." *Posr v. Court Officer Shield #207*, 180 F.3d 409, 417 (2d Cir. 1999). For a plausible § 1983 claim, a plaintiff must additionally plead, and later submit evidence, that there was a sufficient post-arraignment deprivation of liberty. *Rotherman v. N.Y.C. Transit Auth.*, 215 F.3d 208, 215 (2d Cir. 2000). As with false arrest, the contrary existence post-arraignment of probable cause is a complete defense to malicious prosecution. *Manganiello v. City of New York*, 612 F.3d 149, 161-62 (2d Cir. 2010). If probable cause exists at the time of the arrest, "it continues to exist at the time of the prosecution unless undermined by the discovery of some intervening fact." *Johnson v. Constantellis*, 221 F. App'x 48, 50 (2d Cir. 2007) (internal quotations omitted).

The formula for arrest and prosecution is not secret. "Probable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Fonseca v. Alterio*, No. 3:03-CV-1055 (AVC), 2006 WL 2165695, at *4 (D. Conn. July 28, 2006) (quoting *Weyant*, 101 F.3d at 852). When a defendant moves against such claims in absence of trial, the motion court looks to the totality of the circumstances surrounding the arrest and prosecution. *Manganiello v. City of New York*, 612 F.3d 149 (2d Cir. 2010) (citing *Illinois v. Gates*, 462 U.S. 213, 238, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983)).

There are guideposts for the assessment process. For example, it is clearly established in this circuit that a "law enforcement official has probable cause to arrest if he received his information from some person, normally the putative victim or eyewitness, unless the

circumstances raise doubt as to the person's veracity." *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006) (quoting *Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000)). "[W]hen an arresting officer has been advised of a crime by a person who claims to be the victim and who it seems reasonable to believe is telling the truth, he typically has probable cause to effectuate an arrest." *Powell v. Murphy*, 972 F. Supp. 2d 335, 342 (E.D.N.Y. 2013).

Probable cause supporting Cooper's arrest is manifestly established by the pleadings. Cooper's complaint acknowledges that NYPD officers arrested him in response to a report from the purported victim of a crime, Allen. Compl. ¶¶ 32, 52, 65. The arrest report[5] sheds additional light, stating: "AT T/P/O C/V STATES HE PLACED BAG DOWN CONTAINING AN IPHONE, IPAD CHARGER, AND VARIOUS PAPERS. THE DEFENDANT DID REMOVE WITHOUT PERMISSION OF THE C/V, DEFENDANT DID ATTEMPT TO LEAVE PREMISE WITH BAG."

Though Cooper reasons that Allen "did not and could not have had personal knowledge of any of the incident he complained of," Compl. ¶ 65, he has not pointed to any facts that should have indicated to defendant officers that the reporting was unreliable. "The veracity of citizen complaints who are the victims of the very crime they report to the police is assumed." *Miloslavsky v. AES Eng'g Soc., Inc.*, 808 F. Supp. 351, 355 (S.D.N.Y. 1992), *aff'd*, 993 F.2d 1534 (2d Cir. 1993). Indeed, Cooper has not pleaded any facts that would admit to the

---

[5] The arrest report, though not attached to the complaint, is incorporated by reference, as each of Cooper's claims is premised on his criminal arrest and prosecution proceedings. "In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco*, 622 F.3d at 112. The covered prosecution that Cooper pleads was constitutionally defective could not have moved forward without these documents; they were certainly known to him before and at the time of pleading are deemed incorporated by reference in the pleadings.

reasonable inference that the police officers had any reason to believe Allen was lying or mistaken. In the absence of such pleading, Cooper cannot neutralize the probable cause defense established by his pleadings and the documents incorporated by reference in them. The § 1983 claims grounded in false arrest, false imprisonment, and malicious prosecution, as well as their pendant state law claims, are dismissed.

      b.  <u>Delay and Denial of Medical Treatment</u>

The Due Process Clause of the Fourteenth Amendment protected Cooper, a pretrial detainee, from deliberate indifference to his health and medical needs. *Weyant*, 101 F.3d at 856 ("The rights of one who has not been convicted are protected by the Due Process Clause; and while the Supreme Court has not precisely limned the duties of a custodial official under the Due Process Clause to provide needed medical treatment to a pretrial detainee, it is plain that an unconvicted detainee's rights are at least as great as those of a convicted prisoner."). The government has a duty to provide adequate medical care to all detainees, and any deliberate indifference to an inmate's serious medical needs is considered "unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S. Ct. 285, 291, 50 L. Ed. 2d 251 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173, 96 S. Ct. at 2925, 49 L. Ed. 2d 859 (1976)).

A finding of deliberate indifference requires more than mere negligence: an official must demonstrate "reckless disregard for the substantial risk posed by the detainee's serious medical condition." *Weyant*, 101 F.3d at 856. Deliberate indifference analysis includes both an objective and subjective standard: objectively, the condition must be "sufficiently serious" to warrant urgent medical attention, which was not received; and, subjectively, the official acted with a culpable state of mind. *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996) (citing

*Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994)).

The City defendants do not dispute that plaintiff has plausibly alleged that he suffered from a sufficiently serious condition. Rather, they contend that Cooper has failed to allege deliberate indifference to that condition. Cooper's complaint states that the officers, though aware of Cooper's medical condition, "took no action to provide or request immediate medical care for the plaintiff." Compl. ¶ 71. The basis of this assertion, however, is not supported by pleaded facts. Plaintiff's arrest report states that the incident took place at 1:15pm, and it was reported at 1:32pm. Cooper's emergency room report[6] indicates he was admitted to the emergency room less than 20 minutes later, at 1:50pm. JHMC Report, Ex. F to the Decl. of Brian Osterman, dated February 18, 2015. Though Cooper was unconscious during transport and unable to recall the length of the alleged delay before he reached the hospital, there can be no credible reading of the complaint in which the time between arrest and treatment alone can evince deliberate indifference to medical needs.

Cooper next theorizes that the police officers "influenced the hospital to stop treating him and clear him for discharge," and that they were "actually involved in removing the tubes inserted into the plaintiff's left lower rib in order to forcefully discharge him to the City defendant officers." Pl. Opp. at 10. Yet the complaint refers only vaguely to "defendant officers" and "NYPD," Compl. at ¶¶ 36-38, and does not suggest, much less allege, that Officers Madden, O'Neil, Kudow, or DiTomaso were even present at the hospital at the time of

---

[6] The hospital records are, like the arrest report, incorporated by reference into the complaint. The Court refers to them only for the time of admission.

discharge. In fact, the pleadings do not suggest that those defendants were even aware that further medical treatment was needed or requested or that they were personally involved in denying him care at any time after his critical transport to JHMC.[7] Deliberate indifference, in sum, has not been plausibly alleged. The records incorporated by reference in the pleadings demonstrate convincingly that Cooper received immediate treatment and remained under hospital care until medical discharge. The claim is dismissed.

### c. Excessive Detention

To prevail on an excessive detention claim, a plaintiff must show "(1) that he has a right to be free from continued detention stemming from law enforcement officials' mishandling or suppression of exculpatory evidence, (2) that the actions of the officers violated that right, and (3) that the officers' conduct 'shocks the conscience.'" *Russo v. City of Bridgeport*, 479 F.3d 196, 205 (2d Cir. 2007) (quoting *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 846, 118 S. Ct. 1708, 1717, 140 L. Ed. 2d 1043 (1998)). *Russo*, and related cases, address a suspect's right "to be free from continued detention after it was or should have been known that the detainee was entitled to release." *Id.* at 207 (quoting *Cannon v. Macon Cty.*, 1 F.3d 1558, 1563 (11th Cir. 1993)). When considering an excessive detention claim, the relevant factors include "(1) the length of time the plaintiff was incarcerated; (2) the ease with which the exculpatory evidence in the defendant officers' possession could have been checked; and (3) the alleged intentionality of the defendants' behavior." *Russo*, 479 F.3d at 209-10.

Cooper's excessive detention claim is premised on his allegation that JHMC "cleared him

---

[7] More perversely, this claim is also at odds with the complaint's contention that JHMC "cleared him for discharge but continued to detain him at the directive and convenience of the defendant officers from NYPD." Compl. at ¶ 35. That Cooper could simultaneously be detained beyond being properly cleared for medical discharge, yet also have been discharged prematurely, highlights the fatal ambiguity in this alleged grievance.

for discharge but continued to detain him at the directive and convenience of the defendant officers from NYPD." Compl. at ¶ 35. But once again, this allegation is at odds with the very next paragraph, which claims that the doctors released him prematurely, and denied him necessary medical care in order to "hand[] the plaintiff over to the defendant police officers despite the fact that the plaintiff was still bleeding from the side and was hurting all over himself." Compl. at ¶ 36. As a matter of basic logic, Cooper has not plausibly pled an excessive detention claim when it is contradicted by the other allegations he makes in the very same pleading.

Even assuming the detention allegations were not contradicted, and Cooper could plausibly allege he had been cleared for discharge but not released immediately, he would still have had to plead facts showing that the officers knew he had a right to be released from the hospital but also to be free of their detention anywhere, and that any delay in his release was unreasonable.

> Examples of unreasonable delay are delays for the purpose of gathering additional evidence to justify the arrest, a delay motivated by ill will against the arrested individual, or delay for delay's sake. In evaluating whether the delay in a particular case is unreasonable, however, courts must allow a substantial degree of flexibility. Courts cannot ignore the often unavoidable delays in transporting arrested persons from one facility to another, handling late-night bookings where no magistrate is readily available, obtaining the presence of an arresting officer who may be busy processing other suspects or securing the premises of an arrest, and other practical realities.

*Cty. of Riverside v. McLaughlin*, 500 U.S. 44, 56-57, 111 S. Ct. 1661, 1670, 114 L. Ed. 2d 49 (1991). Here, Cooper does not specify when he was, he says, cleared for discharge, or how long he remained in the hospital despite such clearance. Moreover, he fails to identify which officer(s) among the City defendants, if any, were responsible for the delay, or any factual,

17

nonconclusory allegations showing that such instructions were given to any of the hospital defendants. He does not indicate, as to another essential element, what exculpatory information was at hand that the officers refused to act on. Further, his complaint suggests no reason whatsoever for delaying his discharge, let alone why such a delay was unreasonable or improperly motivated. Nor does he allege that, had his discharge come, his detention would have ended. In fact, he pleads the exact opposite. The complaint merely shows unequivocally that Cooper was released from JHMC and arraigned on March 18, 2013. Compl. at ¶ 51. It all happened on the same day. There are, simply put, no facts pled that any of the defendant officers actively or personally engaged in any behavior that "shocks the conscience" and unnecessarily delayed Cooper's release from detention. That claim, too, is dismissed.

### d. *Monell* Liability

Of course, unlike state law torts, there is no classic *respondeat superior* liability under § 1983. *Monell*, 436 U.S. at 694. Rather, for municipal employer to be liable, there must be allegations and proof of "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). A plaintiff, consequently, must plausibly allege that he has suffered both a constitutional violation and that the violation was caused by a custom or policy of the City. *Monell*, 436 U.S. at 690. A complaint's "mere assertion ... that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference." *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993), *overruled on other grounds*, *Leatherman v. Tarrant Cty. Narcotics & Coordination Unit*, 507 U.S. 163, 164 (1993). Furthermore, "a single incident alleged in the complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy." *Ricciuti v. N.Y.C.*

*Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991).

Here, Cooper asserts only conclusory allegations that NYPD has a widespread, undefined custom or policy of failing to train its officers in the "correct and legal nature of probable cause, the consequences of false and misleading statements made by its officers in the court of law or in documents initiating criminal prosecutions in a court of law, the elements and requirements of due process, and the constitutional rights of citizens." Comp. at ¶ 86. He sets forth no examples of the implementation of this practice, and offers no factual support beyond those of his own arrest. Any indication that policy-making actors are or were pursuing an unlawful practice or custom conferring liability is patently insufficiently pled. The cause seeking to interpose *Monell* liability against the City is dismissed.

### e. State Law Claims

Plaintiff's remaining claims are grounded in state law. They are excessive force, assault and battery, and intentional infliction of emotional distress. They are dismissed as time-barred for failure to comply with New York's notice of claim prerequisite to state law-based claims against municipalities and their employees.

The alleged assault on plaintiff took place on March 12, 2013; his arraignment followed on March 18, 2013. Mistakenly, he argues that his state law claims did not begin to accrue until he was released from custody.[8] Federal law "establishes as the time of accrual that point in time when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Singleton v. City of New York*, 632 F.2d 185, 191 (2d Cir. 1980) (quoting *Kaiser v.*

---

[8] Only malicious prosecution, when premised on an unconstitutional conviction, begins to accrue at release from custody. *Covington v. City of New York*, 171 F.3d 117, 122 (2d Cir. 1999) (quoting *Heck v. Humphrey*, 512 U.S. 477, 489-90 (1994)). But that is of no moment, because probable cause supported Cooper's arrest.

*Cahn*, 510 F.2d 282, 285 (2d Cir. 1974)). Claims of excessive force, for example, accrue "when the use of force occurred." *McClanahan v. Kelly*, No. 12-CV-6326 (PGG), 2014 WL 1317612, at *4 (S.D.N.Y. Mar. 31, 2014) (quoting *Jefferson v. Kelly,* No. 06-CV-6616 (NGG) (LB), 2008 WL 1840767, at *3 (E.D.N.Y. Apr. 22, 2008)). For these claims, then, the accrual date is March 12, 2013, the date of his arrest and alleged assault by NYPD officers.

New York law provides that "[n]o action … shall be prosecuted or maintained against the city … or any employee … unless a notice of claim shall have been made and served upon the city." N.Y. Gen. Mun. L. § 50-i(1). *Poventud v. City of New York*, 750 F.3d 121, 132 (2d Cir. 2014). From March 12, 2013, Cooper had 90 days, or until June 10, 2013, to file a notice of claim pursuant to New York General Municipal Law 50-k. With no explanation, Cooper missed the statutory deadline. He filed his notice of claim a month too late, on July 10, 2013. His state law claims against the City defendants are, therefore, barred for failure to comply with the statutory prerequisite for suit. *See Fincher v. Cty. of Westchester*, 979 F. Supp. 989, 1002 (S.D.N.Y. 1997) ("The notice of claim requirements apply equally to state tort claims brought as pendent claims in a federal civil rights action."). They are dismissed.

### Conclusion

Cooper's § 1983 claims against the City defendants of false arrest, false imprisonment, malicious prosecution, denial and delay of medical treatment, excessive detention, and all pendent state law claims against the City defendants are dismissed. The § 1983 claims and EMTALA claims against JHMC, Dr. Punsal, and Dr. Chan are also dismissed. The Court declines to exercise supplemental jurisdiction over Cooper's related state law claims against the hospital defendants.

Plaintiff has 10 days from its entry of this order on the docket to show cause why all

claims against defendant Roderik Allen should not be dismissed for failure to properly state a § 1983 claim against him.[9]

Cooper's remaining § 1983 claims of excessive force and failure to intercede, interposed against the individual NYPD officers, may proceed.

The case is referred to Magistrate Judge Peggy Kuo for her continued pretrial supervision.

So Ordered.

Dated: Brooklyn, New York
August 15, 2016

/s/ USDJ ERIC N. VITALIANO
ERIC N. VITALIANO
United States District Judge

---

[9] Allen has not appeared in this action and did not move to dismiss the claims against him. Nevertheless, the Court may dismiss these claims *sua sponte* after giving Cooper notice and the opportunity to be heard. *Wachtler v. Cty. of Herkimer*, 35 F.3d 77, 82 (2d Cir. 1994) (quoting *Thomas v. Scully*, 943 F.2d 259, 260 (2d Cir. 1991) (per curiam)). The Court, additionally, notes that criminal complainants are not generally state actors for purposes of § 1983. Even "providing false information to an arresting officer is not, by itself, sufficient to state a claim against [a] private party under § 1983.") *Valez v. City of New York*, No. 08-CV-3875 (DLC), 2008 WL 5329974, at *3 (S.D.N.Y. Dec. 16, 2008) (quoting *Moore v. Marketplace Rest., Inc.*, 754 F.2d 1336, 1352 (7th Cir. 1985)). Unless there is "proof of a 'plan, prearrangement, conspiracy, custom or policy' between the complainant and law enforcement authorities, the complainant is not acting under color of state law." *Id.* (quoting *Ginsberg v. Healey Car & Truck Leasing, Inc.*, 189 F.3d 268, 272-73 (2d Cir. 1999). No such plan, conspiracy, intent, or meeting of the minds is demonstrated by Cooper's pleadings, which state only that Allen "did not and could not have had personal knowledge of any of the incident he complained of," he "acted without probable cause in making a complaint and in making false statements," and he "did not honestly and reasonable believe that there were grounds for the action..." Compl. at ¶ 65.